**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 96-4108

WHITT NEAL,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert D. Potter, Senior District Judge.
(CR-96-21)

Argued: September 23, 1996

Decided: November 27, 1996

Before WILKINS, Circuit Judge, BUTZNER, Senior Circuit Judge,
and MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Vacated and remanded by published opinion. Judge Wilkins wrote the
opinion, in which Senior Judge Butzner and Senior Judge Michael
joined.

_____

**COUNSEL**

**ARGUED:** George Vernon Laughrun, II, GOODMAN, CARR &
NIXON, Charlotte, North Carolina, for Appellant. Clifford Carson
Marshall, Jr., OFFICE OF THE UNITED STATES ATTORNEY,
Asheville, North Carolina, for Appellee. **ON BRIEF:** Mark T. Cal-

loway, United States Attorney, James M. Sullivan, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

_____

**OPINION**

WILKINS, Circuit Judge:

Whitt Neal appeals an order of the district court finding him guilty of criminal contempt for failing to obey a subpoena. <u>See</u> 18 U.S.C.A. § 401(3) (West 1966). Because the district court committed plain error in failing to refer the matter to the United States Attorney or some other appropriate prosecutor, we vacate Neal's conviction and remand for further proceedings consistent with this opinion.

I.

Neal, an officer with the Charlotte-Mecklenburg Police Department, was responsible for coordinating law enforcement efforts regarding the activities of various abortion-protest groups. On January 25, 1996, Neal was served with a subpoena directing him to appear in federal district court on the morning of February 2, 1996 to testify as a witness in a civil lawsuit involving some of the protestors. Neal failed to appear in court pursuant to the subpoena. As a result, the district court issued an order requiring Neal to appear and show cause why he should not be held in contempt of court.

The district judge conducted the resulting hearing without the aid of a prosecutor, deciding himself which witnesses would testify against Neal. The court called four witnesses to the stand and conducted the direct examination of them. It is apparent that the court learned the substance of the testimony of these witnesses prior to the hearing through extrajudicial means. The principal witness against Neal was Christine Stole, the process server who served him with the subpoena. Stole testified on direct examination that when she gave Neal the subpoena he commented, "I'm going to throw this in the trash can." J.A. 19. During cross-examination, Stole conceded that she could not be sure he was referring to the subpoena. The court also called as witnesses two Deputy United States Marshals and Neal's

2

supervisor, all of whom had conversations with Neal relating to his failure to appear.

Neal, who was represented and examined by counsel, testified that he did not intentionally disobey the subpoena. He claimed that he inadvertently overslept, having worked the night shift on the evening prior to February 2, 1996. Consequently, he argued, he lacked the requisite criminal intent for a contempt conviction. The district court conducted a brief cross-examination, during which Neal admitted that he received the subpoena and that he was aware that he was required to appear. Discounting Neal's explanation for not appearing, the court concluded that he wilfully disobeyed the subpoena. Neal was sentenced to a two and one-half day term of imprisonment.

II.

Neal contends that the district court erred in assuming the inconsistent roles of prosecutor and judge during the hearing. Because Neal failed to raise this objection below, we will reverse only if the district court committed plain error in failing to refer the matter to the United States Attorney or otherwise appoint a prosecutor. See Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993); United States v. David, 83 F.3d 638, 641 (4th Cir. 1996). To reverse for plain error, Rule 52(b) requires us to find: "1) error; 2) that is plain; and 3) that affect[s] substantial rights." David, 83 F.3d at 641 (alteration in original) (internal quotation marks omitted). Even if these three requirements are satisfied, however, we will exercise our discretion to correct the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 732 (alteration in original) (internal quotation marks omitted).

A.

Our first inquiry is whether the district court erred in conducting Neal's criminal contempt hearing without the aid of a prosecutor. We conclude that it did.

It is well established that courts possess an inherent "`power to impose silence, respect, and decorum, in their presence, and submis-

3

sion to their lawful mandates.'" International Union, UMWA v. Bagwell, 114 S. Ct. 2552, 2559 (1994) (quoting Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 227 (1821)). Moreover, courts are vested with the power to initiate contempt proceedings to ensure that the judiciary is not utterly dependent upon the other branches of government to vindicate judicial authority. See Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 795-96 (1987) (holding that a court must possess the power to appoint a private prosecutor in a contempt action as means of self-protection). The contempt power, however, is subject to abuse. Bagwell, 114 S. Ct. at 2559. Therefore, "only `[t]he least possible power adequate to the end proposed' should be used in contempt cases." Young, 481 U.S. at 801 (alteration in original) (quoting United States v. Wilson, 421 U.S. 309, 319 (1975)).

The power of a court to impose sanctions for civil contempt differs in several respects from its authority to impose sanctions for criminal contempt, including the procedural safeguards that must be followed. See Bagwell, 114 S. Ct. at 2559. Proceedings for civil contempt "leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." Id. In contrast, "criminal contempt [is] `a crime in the ordinary sense'" and requires that the contemnor be afforded fundamental procedural safeguards. Young, 481 U.S. at 799 (quoting Bloom v. Illinois, 391 U.S. 194, 201 (1968)).

The procedures attendant to the prosecution of a criminal contempt charge depend largely upon whether the conduct constitutes direct or indirect contempt. See Young, 481 U.S. at 798. Direct, or in-court, contempt involves conduct occurring "in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court . . . and where immediate punishment is essential to prevent demoralization of the court's authority before the public." In re Oliver, 333 U.S. 257, 275 (1948) (internal quotation marks omitted); see United States v. Willett, 432 F.2d 202, 204 (4th Cir. 1970) (per curiam). Direct contempt may be punished summarily without notice and a hearing. See Bloom v. Illinois, 391 U.S. 194, 204 (1968). In a summary proceeding for direct criminal contempt, "the otherwise inconsistent functions of prosecutor, jury and judge mesh into a single individual."[1] Sandstrom

_____

[1] Except for serious criminal contempts, the procedural safeguards required for criminal contempt proceedings do not apply when the con-

v. Butterworth, 738 F.2d 1200, 1209 (11th Cir. 1984), cert. denied, 461 U.S. 1109 (1985). Indirect, or out-of-court, contempt does not occur within the presence of the court and must be proven through the testimony of third parties or the testimony of the contemnor. See Willett, 432 F.2d at 204; In re Heathcock, 696 F.2d 1362, 1365 (11th Cir. 1983). The inherent power of the court to punish indirect contempt is limited because conduct occurring out of the presence of the court does not "threaten[ ] a court's immediate ability to conduct its proceedings." Bagwell, 114 S. Ct. at 2559. Thus, indirect contempt may never be punished summarily, see Cooke v. United States, 267 U.S. 517, 536-37 (1925), but rather requires adherence to "`more normal adversary procedures,'" Young, 481 U.S. at 798 (quoting Bloom, 391 U.S. at 204).**2**

Among those procedures that are fundamental to our adversary system is the use of an independent prosecutor to pursue charges against a criminal defendant. It is axiomatic that the prosecution of crimes is not a proper exercise of the judicial function. See, e.g., In re Murchison, 349 U.S. 133, 137 (1955); United States v. Cox, 342 F.2d 167, 171 (5th Cir.), cert. denied, 381 U.S. 935 (1965); see also Bagwell, 114 S. Ct. at 2563 (Scalia, J., concurring) (noting that the idea "[t]hat one and the same person should be able to make the rule, to adjudicate its violation, and to assess its penalty is out of accord with our usual notions of fairness and separation of powers"); Young, 481 U.S. at 816 (Scalia, J., concurring in judgment) (emphasizing that the judicial power "does not include the power to seek out law violators in order to punish them--which would be quite incompatible with the task of neutral adjudication"). Thus, when the contumacious conduct at issue occurs out of the presence of the court or does not interfere with an ongoing proceeding immediately before the court,

_____

duct in question occurs in the actual presence of the court. See Bagwell, 114 S. Ct. at 2557 n.2.

**2** Federal Rule of Criminal Procedure 42 preserves the historical distinction between in-court and out-of-court contempt. See Young, 481 U.S. at 799. The court may punish direct contempt in a summary fashion. Fed. R. Crim. P. 42(a). Out-of-court contempt, however, may be punished only after the contemnor is afforded notice and a hearing. Fed. R. Crim. P. 42(b).

5

the inherent contempt power does not permit a judge to dispense with a prosecutor altogether and fill the role himself. In re Murchison, 349 U.S. at 136-39 (holding that the judge violated the Due Process Clause of the Fourteenth Amendment when he initiated, prosecuted, and adjudicated indirect criminal contempt charges); see American Airlines, Inc. v. Allied Pilots Ass'n, 968 F.2d 523, 531 (5th Cir. 1992) (holding that the district court erred when it " sua sponte initiated the contempt proceeding, questioned the witnesses and otherwise acted as prosecutor, and then decided all factual and legal issues"); In re Davidson, 908 F.2d 1249, 1251 (5th Cir. 1990) (holding that the district court committed reversible error when it prosecuted and adjudicated criminal contempt charges); see also United States v. Griffin, 84 F.3d 820, 829 (7th Cir. 1996) (noting that the "crucial determinant" of whether appropriate procedural protections have been afforded in a criminal contempt proceeding is "the extent of the judge's intrusion" into the authority of the executive branch to prosecute crimes). But cf. In re Grand Jury Proceedings, 875 F.2d 927, 934 (1st Cir. 1989) (concluding that a prosecutor need not be appointed for indirect criminal contempt proceedings if the evidence is so simple that the judge conducting the proceedings may remain an impartial factfinder).

Here, it is undisputed that the proceedings against Neal were criminal in nature. Further, it is clear that Neal's conduct constituted indirect contempt since the court did not witness "all of the essential elements of the misconduct." In re Oliver, 333 U.S. at 275. Because the district judge investigated the incriminating facts through extrajudicial means, introduced evidence against Neal, and otherwise presented the Government's case, he improperly assumed a prosecutorial role. As a result, we conclude that it was error for the district court to conduct the contempt proceeding without an independent prosecutor.

B.

Having determined that the district court erred in prosecuting the contempt charge against Neal, we next turn to the question of whether the error is plain. An error, to be plain, must be"clear" or "obvious." Olano, 507 U.S. at 734 (internal quotation marks omitted); David, 83 F.3d at 642. This standard is satisfied when the"settled law of the Supreme Court or this circuit" establishes that an error has occurred.

6

United States v. Mitchell, 996 F.2d 419, 422 (D.C. Cir. 1993). In the absence of such authority, decisions by other circuit courts of appeals are pertinent to the question of whether an error is plain. See United States v. Gastiaburo, 16 F.3d 582, 588 (4th Cir.) (looking to authority from other circuits to determine whether error was plain), cert. denied, 115 S. Ct. 102 (1994); see also United States v. Alli-Balogun, 72 F.3d 9, 12 (2d Cir. 1995) (stating that "we do not see how an error can be plain error when the Supreme Court and this court have not spoken on the subject, and the authority in other circuit courts is split").

At the time of Neal's hearing, the settled law of the Supreme Court was abundantly clear that the simultaneous assumption of the inconsistent roles of prosecutor and judge transgresses our most fundamental notions of procedural fairness.[3] In In re Murchison, the Supreme Court held that it was error for a judge to initiate, prosecute, and adjudicate charges of indirect criminal contempt. In re Murchison, 349 U.S. at 137-39; see also Young, 481 U.S. at 796-97 (accepting by implication that district court could not prosecute an indirect criminal contempt in ruling that the power to appoint a private attorney to prosecute indirect contempt was necessary to protect the authority of the judiciary). Moreover, the courts of appeals are in accord that a district court exceeds its power in assuming the role of a prosecutor during proceedings for indirect criminal contempt. See, e.g., Griffin, 84 F.3d at 829; American Airlines, 968 F.2d at 531; In re Grand Jury Proceedings, 875 F.2d at 933-34;[4] cf. United States v. Parodi, 703

_____

[3] An error is "plain" if the "error is clear both at the time of trial and at the time of appeal." See David, 83 F.3d at 642.
[4] The First Circuit recognized in In re Grand Jury Proceedings that the failure to appoint an independent prosecutor may well require the judge impermissibly to fill the role himself. In re Grand Jury Proceedings, 875 F.2d at 933-34. Nevertheless, the court concluded that in a situation in which the evidence was straightforward, a judge would not be drawn away from his role of neutral factfinder by acting as a prosecutor. Although we disagree with the line drawn by the First Circuit, its recognition that a judge acts improperly in prosecuting a contempt action in circumstances that require the judge to assume an active prosecutorial role squares with the weight of authority that, in cases involving indirect contempt, the judge cannot both present the Government's case and decide the factual and legal issues.

7

F.2d 768, 775-76 (4th Cir. 1983) (noting that a judge "should take particular care" during trial that he does not "appear to usurp the role of . . . the prosecutor"); United States v. Bland, 697 F.2d 262, 265 (8th Cir. 1983) (warning against judicial assumption of "the mantle of an advocate"); Figueroa Ruiz v. Delgado, 359 F.2d 718, 721-22 (1st Cir. 1966) (finding that a procedure whereby the trial judge introduced the Government's case and cross-examined on behalf of the Government denied the defendant due process). Thus, the district court committed a "plain" error by failing to appoint an independent prosecutor.

C.

We next address the question of whether the error affects substantial rights. See Olano, 507 U.S. at 734. Although this usually requires that the error be prejudicial, this circuit has recognized "`a special category of forfeited errors that can be corrected regardless of their effect on the outcome.'" David, 83 F.3d at 647 (quoting Olano, 507 U.S. at 735). Errors that are not susceptible to harmless error review fall within this special category and therefore "necessarily" affect substantial rights. David, 83 F.3d at 647.

The separation of powers among the branches of government is a foundational principle to our system of government; the idea of lodging in one individual the power to prosecute and sit in judgment "summons forth . . . the prospect of the most tyrannical licentiousness." Bagwell, 114 S. Ct. at 2559 (internal quotation marks omitted). The assumption of the role of prosecutor by the district court is the kind of error that we have long understood to undermine the integrity of court proceedings: "[T]here is no liberty, if the power of judging be not separated from the legislative and executive powers. . . . [L]iberty can have nothing to fear from the judiciary alone, but would have every thing to fear from its union with either of the other departments . . . ." The Federalist No. 78, at 491 (Alexander Hamilton) (Benjamin F. Wright ed., 1961) (internal quotation marks omitted). Because errors that "render a trial fundamentally unfair" are not subject to harmless error review, Rose v. Clark, 478 U.S. 570, 577-78 (1986), we conclude that the failure of the district judge to appoint an independent prosecutor to pursue the charge of indirect contempt is an error that affects substantial rights.

8

D.

Even if a district court commits an error that is plain and that affects substantial rights, the use of our authority to correct the error remains discretionary. See Olano, 507 U.S. at 735-36. We should exercise this discretion if "a miscarriage of justice would otherwise result," or "if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. at 736 (internal quotation marks omitted) (alteration in original). We have previously rejected a per se rule requiring that every error that is not susceptible to harmless error review must be noticed as plain error. David, 83 F.3d at 647-48. Instead, the proper analysis requires a case-by-case examination in light of the entire record. See id. at 648.

Our review of the record convinces us that it is appropriate to notice the plain error of the district court. The melding of the judicial and prosecutorial functions is a fundamental error that undercuts the dispersion of power among the branches and, as a result, casts doubt on the integrity of the judicial process. To allow a district court to investigate the matter, call the witnesses for the prosecution, conduct the direct examination of them, and sit in judgment of the defendant undoubtedly undermines the fairness, integrity, and public reputation of judicial proceedings.

III.

For the foregoing reasons, we vacate Neal's conviction for criminal contempt and remand for further proceedings consistent with this opinion before a different district judge.**5**

VACATED AND REMANDED
_____

**5** Generally, there would be no impediment to the same judge handling the adversarial proceedings for indirect contempt unless an appearance of impropriety would indicate that recusal was appropriate. See Nakell v. Att'y Gen. of N.C., 15 F.3d 319, 325 (4th Cir.), cert. denied, 115 S. Ct. 184 (1994) (noting that a judge is presumed to be qualified to preside over a contempt hearing and that the contemnor bears a substantial burden to demonstrate otherwise). Here, while we do not question the personal integrity of the district judge, because guilt was adjudicated in the earlier proceeding, the appearance of fairness and impartiality is best advanced by reassignment to another district judge.

9